MEMORANDUM *
Wild Pish Conservancy and related plaintiffs (collectively, the “Conservation Groups”) appeal from the district court’s grant of summary judgment to the National Oceanic and Atmospheric Administration’s National Marine Fisheries Service (“NMFS”). The facts are known to the parties and need not be repeated here, except as necessary to explain our decision.
We are not allowed to “substitute [our] judgment for that of the agency,” Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), and may only set aside the actions of NMFS in this case if they were “arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.” 5 U.S.C. § 706(2)(A); The Lands Council v. McNair, 537 F.3d 981, 987 (9th Cir.2008) (en banc) (“[A] decision [i]s arbitrary and capricious only if the agency relied on factors Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, or offered an explanation that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.” (internal quotation marks and citation omitted)).
NMFS was required to perform two related actions in this case: it was asked to approve or deny a resource management plan (“RMP”), and it was asked to draft a biological opinion (“BiOp”). In both cases, NMFS’s determination rested on whether or not implementation of the RMP would “appreciably reduce the likelihood of survival and recovery” of the Puget Sound Chinook salmon. 50 C.F.R. § 223.203(b)(6)(iv); id. § 402.02.
The Conservation Groups assert that NMFS did not properly factor “recovery” into its analysis. We disagree. While National Wildlife Federation v. National Marine Fisheries Service, 524 F.3d 917, 931-33 (9th Cir.2008), precluded NMFS from “simply avoiding] any consideration of recovery impacts,” id. at 932, it was careful not to require NMFS to “import ESA’s separate recovery planning provisions into the section 7 consultation process,” id. at 936. Attention to recovery “simply provides some reasonable assurance that the agency action in question will not appreciably reduce the odds of success for future recovery planning, by tipping a listed species too far into danger.” Id. Ultimately, the RMP need not boost the Chinook’s chances of recovery; NMFS must only determine those chances are not “appreciably” diminished by the plan. See id. at 930 (“Agency action can only ‘jeopardize’ a species existence if that agency action causes some deterioration in the species’ pre-action condition.”).
Here, we conclude that NMFS employed “the best scientific and commercial data available,” 16 U.S.C. § 1536(a)(2), and correctly interpreted 50 C.F.R. *339 § 223.203(b) when it assessed the impact of the RMP on the recovery prospects of the Puget Sound Chinook ESU. Deciding how to assess, and indeed the assessment of, the impact of a RMP on an ESU’s potential for recovery “involves a great deal of predictive judgment. Such judgments are entitled to particularly deferential review.” Trout Unlimited v. Lohn, 559 F.3d 946, 959 (9th Cir.2009) (citing The Lands Council, 537 F.3d at 993). The conclusion NMFS reached in this case was that insofar as total recovery was unachievable under current habitat conditions, the RMP did not appreciably reduce the Chinook’s chances of eventually reaching that goal. This conclusion — and the methods adopted to reach it — was reasonable and entitled to substantial deference. See id. at 959 (noting that we will not strike down agency action where “NMFS approached the ... decision in a thoughtful, comprehensive manner that balanced the agency’s concerns and goals,” and relied on an analysis of “ ‘substantial — though not dispositive — scientific data, and not on mere speculation’ ” (quoting Greenpeace Action v. Franklin, 14 F.3d 1324, 1333 (9th Cir.1992))). We therefore decline to “second guess NMFS’s resolution of [a] scientific question,” id. at 956, in its area of “technical expertise,” Marsh v. Or. Natural Res. Council, 490 U.S. 360, 377, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989) (internal quotation marks and citation omitted).[1]
Accordingly, the district court’s grant of summary judgment to NMFS is
AFFIRMED.

 This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

. This conclusion encompasses NMFS’s approval of the exploitation rates in the Georgia Straight Region. NMFS’s ultimate analysis was based on the recovery prospects of the ESU as a whole; not those of an isolated population. ER 2:180-81. While acknowledging that “any ESU-wide recovery scenario should include at least two to four ... populations in each of five geographic regions," NMFS also recognized that other factors, including “federal trust responsibilities to treaty Indian tribes [would] also be considered." ER 2:181. NMFS assessed these additional considerations when making its decision with respect to the Georgia Strait Region, and its conclusion is entitled to deference.